[647 NYS2d 20]

In the Matter of BERNARD F. HORAK, an Attorney, Respondent. GRIEVANCE COMMITTEE FOR THE TENTH JUDICIAL DISTRICT, Petitioner.

Second Department, August 26, 1996

### APPEARANCES OF COUNSEL

*Frank A. Finnerty, Jr.,* Syosset *(Robert P. Guido* of counsel), for petitioner.

*Newman & Cahn,* Carle Place *(Neil R. Cahn* of counsel), for respondent.

**OPINION OF THE COURT**

Per Curiam.

In this proceeding, the respondent was charged with 26 allegations of professional misconduct. The Special Referee sustained only Charge Thirteen of the 26 charges. The petitioner has moved to confirm the report of the Special Referee insofar as it sustained Charge Thirteen and to disaffirm the report with respect to Charges One through Twelve and Fourteen through Twenty-six. The respondent has cross-moved to confirm the Special Referee's report insofar as it failed to sustain Charges One through Twelve and Fourteen through Twenty-six and to disaffirm the report with respect to Charge Thirteen.

Charge Three alleged that on or about September 13, 1985, the respondent sent a mailgram to the attention of Jeremiah Scott of the Ministry of Housing, Labour and Community Development, St. Vincent and The Grenadines, West Indies (hereinafter St. Vincent), offering his services as follows: "IT IS MY UNDERSTANDING, THE *[SIC]* YOUR COUNTRY WISHES TO PARTICIPATE IN THE PAN AM GAMES IN 1986 AND TO JOIN THE IOC FOR THE 1988 OLYMPICS. I WISH TO OFFER MY PROFESSIONAL SERVICES IN ORDER TO ASSIST YOUR COUNTRY WITH THESE PROJECTS, ESPECIALLY IN THE AREAS OF FORMATION, ORGANIZATION, ADMINISTRATION AND FUNDING. IF YOU HAVE ANY QUESTIONS, AND WOULD LIKE MY ASSISTANCE, PLEASE ADVISE ME OF THE CURRENT STAGE FOR THE ABOVE AREAS".

On or about December 17, 1985, the respondent in his capacity as an attorney-at-law, entered into an agreement with the government of St. Vincent for his services in promoting the entry of St. Vincent into the 1988 Olympics to be held in Seoul, Korea, and to assist generally in raising funds for the development of sports in St. Vincent. The agreement is memorialized in a letter dated December 17, 1985, to the respondent from Jeremiah Scott of the Ministry of Housing, Labour and Community Development, St. Vincent and The Grenadines.

From about February 1986 through August 1986, the respondent entered into a series of loan transactions with Dr. Robert J. Gross, whereby Dr. Gross loaned a total of $30,000 to the respondent, who accepted and received the funds ostensibly in his capacity as the legal representative and attorney and agent for both the National Olympic Committee of St. Vincent and the Government of St. Vincent. In exchange for each loan made in the form of a check payable to the respondent, the respondent issued to Dr. Gross a corresponding series of promissory

notes reflecting principal loans totalling $36,000 at 12% interest per annum, due in six months. At or about the time the respondent received each of the aforementioned checks from Dr. Gross he deposited each into his personal checking account. By his actions, the respondent commingled client funds with his own personal funds in violation of Code of Professional Responsibility DR 9-102 (A) (22 NYCRR 1200.46 [a]).

Charge Four alleged that the respondent failed to properly preserve and identify property received on behalf of his client, thereby violating Code of Professional Responsibility DR 9-102 (B) (2) (22 NYCRR 1200.46 [b] [2]).

Charge Five alleged that the respondent wrongfully converted client funds to his own use and benefit. As of August 12, 1986, the entire sum of $30,000 received by the respondent from Dr. Gross, on behalf of St. Vincent, was withdrawn by the respondent from his personal checking account, and used by the respondent for purposes other than for which they were intended, including personal obligations. By these actions, the respondent violated Code of Professional Responsibility DR 9-102 (22 NYCRR 1200.46).

Charge Six alleged that the actions in Charge Five also violated Code of Professional Responsibility DR 1-102 (A) (4) (22 NYCRR 1200.3 [a] [4]).

Charge Seven alleged that the conduct set out in Charge Five violated Code of Professional Responsibility DR 1-102 (A) (8) (22 NYCRR 1200.3 [a] [8]).

Charge Eight alleged that by the conduct referred to in the previous charges, the respondent wrongfully converted to his own use and benefit funds entrusted to him by another for a specific purpose, in violation of Code of Professional Responsibility DR 1-102 (A) (4) (22 NYCRR 1200.3 [a] [4]).

Charge Nine alleged that by the conduct referred to in Charge Eight, the respondent violated Code of Professional Responsibility DR 1-102 (A) (8) (22 NYCRR 1200.3 [a] [8]).

Charge Ten alleged that the respondent wrongfully failed to render appropriate accounts to a client regarding funds received on the client's behalf. At no time following his receipt or disbursement of the funds received from Dr. Gross did the respondent ever render an accounting of any kind to his client. By these actions, the respondent violated Code of Professional Responsibility DR 9-102 (C) (3) (22 NYCRR 1200.46 [c] [3]).

Charge Eleven alleged that the respondent knowingly made false statements of fact during the course of his representation

of a client. At or about the time the respondent negotiated with Dr. Gross regarding the heretofore described loans, the respondent told Dr. Gross that his client, the National Olympic Committee and the Government of St. Vincent and The Grenadines, had agreed to remain liable for the debt, in full. In truth and in fact, the respondent's client had not agreed, consented, or offered to remain liable in any way for the loans made by Dr. Gross. By his actions, the respondent violated Code of Professional Responsibility DR 7-102 (A) (5) (22 NYCRR 1200.33 [a] [5]).

Charge Twelve alleged that the respondent engaged in conduct involving dishonesty, fraud, deceit, and misrepresentation. The respondent's false statements to Dr. Gross were made for the purpose of inducing Dr. Gross to deliver funds to the respondent for the respondent's own use and benefit. By these actions, the respondent violated Code of Professional Responsibility DR 1-102 (A) (4) (22 NYCRR 1200.3 [a] [4]).

Charge Thirteen alleged that the respondent has failed to properly cooperate with the Grievance Committee in its investigation. On or about November 24, 1993, the Grievance Committee sent a letter by regular mail to the respondent, enclosing a copy of the complaint filed against him by Dr. Gross, which forms the basis of Charges One through Twelve, and requesting that he submit his written response thereto within 10 days. It was only after the issuance of two letters and a two-month delay that the respondent answered. By his two-month delay in submitting an answer to the complaint, the respondent violated Code of Professional Responsibility DR 1-102 (A) (5) and (8) (22 NYCRR 1200.3 [a] [5], [8]).

Charge Fourteen alleged that the respondent submitted to the Grievance Committee materially false and misleading information in connection with the investigation of the complaint filed against him. Within his answer to the complaint the respondent made the following misleading statement: "The monies advanced by Mr. Gross were used to develop the project, with his full knowledge". In truth and in fact, the monies advanced by Mr. Gross were not used to develop the project. By these statements, the respondent violated Code of Professional Responsibility DR 1-102 (A) (4) (22 NYCRR 1200.3 [a] [4]).

Charge Fifteen alleged that by the aforesaid false and misleading statements the respondent also violated Code of Professional Responsibility DR 1-102 (A) (5) and (8) (22 NYCRR 1200.3 [a] [5], [8]).

Charges Seventeen through Twenty-one alleged that the respondent gave false and misleading testimony before the Grievance Committee in violation of Code of Professional Responsibility DR 1-102 (A) (4), (5) and (8) (22 NYCRR 1200.3 [a] [4], [5], [8]).

Charge Twenty-three alleged that the respondent wrongfully failed to refund money paid in advance that had not been earned or used. On or about December 20, 1993, Vincent Tomasino, President of Manhasset Properties, Inc. (hereinafter Manhasset), consulted with the respondent regarding possible tax reassessments of two properties managed by his company. At that time, Tomasino advanced the sum of $400 to the respondent. On or about December 21, 1993, Tomasino discharged the respondent and demanded a full refund. The respondent has failed to comply with the repeated requests for a refund. By these actions, the respondent violated Code of Professional Responsibility DR 2-110 (A) (3) (22 NYCRR 1200.15 [a] [3]).

Charge Twenty-four alleged that by failing to refund his client's money, the respondent violated Code of Professional Responsibility DR 9-102 (C) (4) (22 NYCRR 1200.46 [c] [4]).

Charge Twenty-five alleged that the respondent has failed to satisfy a judgment against him related to his practice of law. In or about April 1994, Manhasset commenced an action against the respondent in the Third District Court of Nassau County, to recover the $400 advanced to the respondent.

After the respondent defaulted and after an inquest, judgment was entered against the respondent on October 27, 1994, in the amount of $453.33, with interest from December 20, 1993. To date, the respondent has failed to satisfy the said judgment. By these actions, the respondent violated Code of Professional Responsibility DR 1-102 (A) (5) (22 NYCRR 1200.3 [a] [5]).

Charge Twenty-six alleged that in failing to satisfy the judgment, the respondent violated Code of Professional Responsibility DR 1-102 (A) (8) (22 NYCRR 1200.3 [a] [8]).

Upon a review of the evidence, we find that the Special Referee erred when he sustained only Charge Thirteen of the 26 charges. In refusing to sustain Charges Three through Twelve, Charges Fourteen and Fifteen, and Charges Seventeen through Twenty-one, the Special Referee rejected the Grievance Committee's contention that there was a lawyer-client relationship between the respondent and the Government of St. Vincent. We find that the Special Referee erred in this conclusion. The

Special Referee omitted from his analysis any reference to either the pleadings or the pretrial conference, in which the respondent admitted that he acted "as attorney". Furthermore, documentation admitted into evidence at the disciplinary proceeding reflects that the respondent held himself out as an "Attorney-at-Law". We further note that it was only after the respondent retained counsel that the respondent declared that he was nothing more than a "sports agent". Charges Three through Twelve, Fourteen and Fifteen, and Seventeen through Twenty-one should have been sustained.

The Special Referee also erred when he failed to sustain Charges Twenty-three through Twenty-six. The respondent's legal fee for services rendered to Manhasset was contingent, equal to one third of the real estate tax savings, if any. Furthermore, the $400 advanced by Mr. Tomasino to the respondent was intended for disbursements. Finally, the respondent admitted that upon his discharge the following day, he agreed to give a full refund to his client, although we note that he did condition the said refund upon his being retained and paid by a new client. While the respondent may have been entitled to a retaining lien against the $400 advanced to him, pending resolution of his claim for fees on a quantum meruit basis, that right was vitiated when the client sued the respondent for the return of the funds and the respondent admittedly defaulted. Charges Twenty-three through Twenty-six should have been sustained.

The Special Referee properly sustained Charge Thirteen and was correct in refusing to sustain Charges One, Two, Sixteen, and Twenty-two. The petitioner's motion should be granted insofar as it seeks to confirm the report of the Special Referee and to the extent that it seeks to disaffirm the report with respect to the Special Referee's findings as to Charges Three through Twelve, Fourteen and Fifteen, Seventeen through Twenty-one, and Twenty-three through Twenty-six. The respondent's motion should be granted to the extent that it seeks to confirm the Special Referee's findings as to Charges One, Two, Sixteen and Twenty-two, and otherwise denied.

In determining an appropriate measure of discipline to impose, we have considered the existence of four prior Letters of Admonition which were issued to the respondent based upon a finding that he, *inter alia,* issued bad checks, failed to maintain required bookkeeping records, failed to cooperate with the Grievance Committee, and failed to satisfy a judgment filed against him. The respondent's prior misconduct,

coupled with our findings in the present disciplinary proceeding that the respondent is guilty of, *inter alia,* conversion, commingling, and failing to cooperate with the investigation of the Grievance Committee warrant the respondent's disbarment from the practice of law.

MANGANO, P. J., BRACKEN, ROSENBLATT, MILLER and HART, JJ., concur.

Ordered that the petitioner's motion to confirm in part and disaffirm in part the report of the Special Referee is granted to the extent that the Charges Three through Fifteen, Seventeen through Twenty-one, and Twenty-three through Twenty-six are sustained; and it is further,

Ordered that the respondent's cross motion to confirm in part and disaffirm in part the report of the Special Referee is granted to the extent that the Charges One, Two, Sixteen, and Twenty-two are not sustained; and it is further,

Ordered that pursuant to Judiciary Law § 90, effective immediately, the respondent, Bernard F. Horak, is disbarred and his name is stricken from the roll of attorneys and counselors-at-law; and it is further,

Ordered that the respondent shall promptly comply with this Court's rules governing the conduct of disbarred, suspended, and resigned attorneys (22 NYCRR 691.10); and it is further,

Ordered that pursuant to Judiciary Law § 90, effective immediately, Bernard F. Horak is commanded to desist and refrain (1) from practicing law in any form, either as principal or as agent, clerk, or employee of another, (2) from appearing as an attorney or counselor-at-law before any court, Judge, Justice, board, commission, or other public authority, (3) from giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) from holding himself out in any way as an attorney and counselor-at-law.